**Certiorari Denied, January 28, 2014, No. 34,472**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-026**

**Filing Date: November 25, 2013**

**Docket No. 32,164**

**LARRY SHERMAN,**

      **Plaintiff-Appellant,**

**v.**

**CIMAREX ENERGY CO., CIMAREX
ENERGY CO. OF COLORADO and
MAGNUM HUNTER PRODUCTION INC.,**

      **Defendants-Appellees,**

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY
Gary L. Clingman, District Judge**

Sutin, Thayer & Browne, P.C.
Timothy J. Atler
Kerry Kiernan
Albuquerque, NM

Kelly, Morgan, Dennis, Corzine & Hansen, P.C.
Denis Dennis
Odessa, TX

Law Office of Allen Moore
Allen Moore
Odessa, TX

for Appellant

Madison & Mroz, P.A.
Robert J. Mroz
Jennifer L. Collins
Albuquerque, NM

1

for Appellees

**OPINION**

**FRY, Judge.**

**{1}** Plaintiff Larry Sherman appeals the district court's order granting summary judgment in favor of Defendants, which we refer to collectively as Cimarex. Plaintiff was injured when he fell over the handrail of a flight of stairs while working on an oil drilling rig. Plaintiff, an employee of an independent contractor hired by Cimarex, sued Cimarex, the owner and operator of the well site. The district court determined that Cimarex owed no duty to Plaintiff to protect against the injury that occurred in this case. We conclude that there are issues of fact as to whether Cimarex had supervisory control over the independent contractor's operations so as to give rise to a duty to act reasonably in exercising that control. We further determine that there are issues of fact surrounding the questions of whether Cimarex's actions breached any duty it owed Plaintiff and whether those actions caused Plaintiff's injuries. Accordingly, we reverse the district court.

**BACKGROUND**

**{2}** Plaintiff worked as a toolpusher for Patterson-UTI Drilling Company. Cimarex contracted with Patterson to drill a well and furnish labor, equipment, and services "under the direction, supervision and control of [Cimarex]." As a toolpusher, Plaintiff was the head Patterson employee on the well site, while Thomas Glen Smith was Cimarex's drilling consultant—the person assigned by Cimarex to supervise the overall operation of the project.

**{3}** Patterson required the toolpusher to be able to remain on location twenty-four hours a day for eight days. However, Plaintiff and another Patterson toolpusher, Tye Lem, had worked out an arrangement whereby the two men alternated a four-days-on-four-days-off work schedule. At the time of the accident, Plaintiff had worked twelve consecutive days because he covered for one of Lem's shifts in the midst of working his own, although only five of these twelve days were spent working on the current well site and under Smith's supervision[1].

**{4}** In the early hours of August 8, 2006, Plaintiff was injured when he fell over a handrail while walking down the stairs from the rig's doghouse. In the district court, the parties disputed what event triggered Plaintiff's movement from the doghouse to the stairs. On appeal, they seem to agree that Plaintiff was asleep in the doghouse and that Smith woke him up so that he could perform a task at the bottom of the rig. Plaintiff got up and left the doghouse, whereupon the accident occurred.

---

[1] While Cimarex disputes that Plaintiff worked for twelve consecutive days, that dispute is immaterial to our resolution of this case.

2

**{5}** Plaintiff filed suit against Cimarex, alleging that it was negligent in failing to provide him a safe place to work, failing to keep a proper lookout for his safety, failing to allow him proper time for rest and recuperation and interrupting his sleep for unnecessary supervision, and creating a system that caused him to work while Cimarex, through the actions of Smith, knew he was fatigued. Cimarex filed a motion for summary judgment on the basis that it owed no duty to Plaintiff because it was not aware that Plaintiff was fatigued. The district court agreed and granted summary judgment in Cimarex's favor. Plaintiff now appeals.

## DISCUSSION

### Standard of Review

**{6}** "We review de novo the granting of summary judgment, construing reasonable inferences from the record in favor of the party that opposed the motion. Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Blea v. Fields*, 2005-NMSC-029, ¶ 10, 138 N.M. 348, 120 P.3d 430 (citation omitted).

### Outline of this Opinion

**{7}** The district court granted summary judgment on the ground that Cimarex owed no duty to Plaintiff, and the parties address their arguments to the question of duty. While "duty . . . is a question of law for the courts to decide," *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181 (internal quotation marks and citation omitted), in the context of the relationship between an independent contractor and an employer,[2] there are fact questions that inform the court's determination about duty. In this Opinion, we first discuss the general principles governing the employer/independent contractor relationship, and we distill the principles set out in our case law and Section 414 of the Restatement (Second) of Torts (1965). We then analyze the parties' arguments in this case.

### General Principles Governing an Employer's Liability to the Employees of an Independent Contractor

**{8}** Generally speaking, "the employer of an independent contractor is not liable for injuries to an employee of the independent contractor." *Valdez v. Cillessen & Son, Inc.*, 1987-NMSC-015, ¶ 21, 105 N.M. 575, 734 P.2d 1258. "The rationale underlying the rule

---

[2]Our Supreme Court has noted that in the context of landowner-contractor-subcontractor liability cases, the terms "general contractor," "owner," "lessor," "lessee," and "employer" are often used interchangeably to denote the possessor of the premises. *See Tipton v. Texaco, Inc.*, 1985-NMSC-108, ¶ 20, 103 N.M. 689, 712 P.2d 1351 (internal quotation marks omitted). For clarity, we use the term "employer" to identify the person or entity that hired the independent contractor.

is that the independent contractor, free to achieve a legal result (set by the [employer]) by any means it chooses, bears the risk should that operation, negligently performed, cause physical harm to others." Marc M. Schneier, *The Independent Contractor Rule: The Shifting Bedrock of Construction Accident Law*, Construction Briefings No. 2002-8, at 2 (2002). As with any general rule, however, there are exceptions, including two scenarios: where the employer controls the premises on which the work is being performed or where the employer retains control over the independent contractor's performance of its work. *Pollard v. Westinghouse Elec. Corp.*, 1995-NMCA-038, ¶ 6, 119 N.M. 783, 895 P.2d 683. These two grounds for an employer's liability correspond to different sections of the Restatement (Second) of Torts (1965), Section 343 and Section 414, respectively. *See Hinger v. Parker & Parsley Petroleum Co.*, 1995-NMCA-069, ¶ 22, 120 N.M. 430, 902 P.2d 1033. In this case, we are concerned with the second basis of liability, which relates to whether Cimarex had control over Patterson's work so as to give rise to a duty owed by Cimarex to Plaintiff.

**{9}** Section 414 of the Restatement addresses the notion of retained control and provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

The Restatement's comments clarify that the extent of the employer's control informs both (1) the question of whether the employer owes a duty to an independent contractor's employee and (2) the question of whether the employer can be deemed liable to that employee, i.e., whether the employer breached its duty and caused the employee's injuries. *See Herrera*, 2003-NMSC-018, ¶ 6 (explaining that "a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages"). Comment a to Section 414 explains that, even where the employer "may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others," this "supervisory control" may subject the employer to liability "unless [the employer] exercises [the employer's] supervisory control with reasonable care so as to prevent the work which [the employer] has ordered to be done from causing injury to others." Restatement (Second) of Torts § 414 cmt. a. Thus, (1) the employer owes a duty to an employee of an independent contractor if the employer has some kind of supervisory control over the independent contractor and, if the employer owes this duty, (2) it may be liable if it exercises its control in a negligent manner that causes injury to the independent contractor's employee.

**{10}** It is clear that both inquiries are fact driven. With respect to the employer's duty, the parties must introduce evidence of the extent of the employer's control over the independent contractor's operations. Once the duty is established, the parties must introduce evidence on the question of liability, which involves the way in which the contractor exercised its control.

4

**{11}** Our case law in New Mexico has primarily addressed the duty aspect of Section 414. For example, in *Tipton*, our Supreme Court noted that the extent of an employer's duty to the employees of an independent contractor "has been held to vary according to the . . . degree of control the [employer] exercises over . . . the details of the work." 1985-NMSC-108, ¶ 20. Similarly, in *Valdez*, decided by our Supreme Court, and in two cases decided in 1995 by this Court, the focus was on the extent of the control retained or exercised by the employer. *See* 1987-NMSC-015, ¶ 20 (stating that "the critical issue is the degree of control alleged to have been maintained by [the employer]"); *Pollard*, 1995-NMCA-038, ¶ 6 (stating that "the extent of the duty owed by [the employer] is to some degree a function of the kind of control either retained or exercised by [the employer] over the work performed by [the independent contractor]"); *Hinger*, 1995-NMCA-069, ¶ 22 (stating that "[t]he extent and nature of the duty is often a function of the degree of control or power retained by the employer over the job").

**{12}** In each of these cases, the Court determined, directly or indirectly, that the extent of the employer's control was a fact question. In *Valdez*, the Court reversed summary judgment in favor of the employer because there were issues of fact as to the extent of control exercised by the employer, 1987-NMSC-015, ¶ 27, as did the Court in *Pollard*, 1995-NMCA-038, ¶¶ 8, 10. And in *Hinger*, the Court concluded that the jury had been properly instructed on the theory of the employer's retained control, thereby implying that the matter was a fact question for the jury. 1995-NMCA-069, ¶¶ 22, 26, 31, 33; *see also Pollard*, 1995-NMCA-038, ¶ 6 (explaining that an analysis of "the kind of control either retained or exercised by [the employer] is primarily a fact-based question which does not lend itself easily to resolution by summary judgment").

**{13}** The question not expressly answered by our case law is how much control the employer must have before it has a duty to an independent contractor's employee. Instead, our cases have simply left the matter up to the fact finder if the evidence created issues about how much control the employer had. For example, in *Valdez*, the employer "agreed to be ultimately responsible for any infractions by [the independent contractor] of labor standards provisions," and it issued detailed instructions to the independent contractor about how to do certain aspects of its work. 1987-NMSC-015, ¶ 24. The Court held that this evidence created issues of fact precluding summary judgment. *Id.* ¶ 26. In *Pollard*, the contract between the employer and independent contractor "arguably reserve[d] to [the employer] the right to direct [the independent contractor] to take such additional measures for the protection of [the independent contractor's] employees, as [the employer] determine[d] to be reasonably necessary." 1995-NMCA-038, ¶ 7 (internal quotation marks omitted). The employer also required the independent contractor to comply with the employer's safety manual and retained the right to approve any safety changes made by the independent contractor. *Id.*

**{14}** While this case law does not provide much definitive guidance about how much control is necessary to give rise to a duty, the Restatement gives us some assistance. Comment c to Section 414 states that "[i]t is not enough that [the employer] has merely a

5

general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations." Restatement (Second) of Torts § 414 cmt. c. Rather, "[t]here must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." *Id.*

**{15}** With these principles in mind, we turn to the circumstances and arguments in the present case.

**Issues of Fact Preclude Summary Judgment**

**{16}** We understand Cimarex's primary argument to be that, as a matter of law, it owed no duty to Plaintiff because it was not required to recognize that Plaintiff was exhibiting signs of fatigue or that he was possibly incapacitated by fatigue, especially given the facts that Cimarex had no control over or awareness of Plaintiff's work schedule and Cimarex did not create the work environment that caused Plaintiff's fatigue. Cimarex's argument is too narrow. The question related to duty is not whether Cimarex had control over Plaintiff's fatigue or his schedule. The question is whether Cimarex had *any* right of supervision over Patterson's operations such that Patterson was not free do its work in its own way. *See* Restatement (Second) of Torts § 414 cmt. c.

**{17}** Plaintiff introduced evidence supporting the view that Cimarex indeed had such supervisory control. Plaintiff submitted the contract between Patterson and Cimarex, which stated that Patterson would "furnish equipment, labor, and perform services . . . under the direction, supervision, and control of [Cimarex]." It further provided, "*Except for such obligations and liabilities specifically assumed by [Patterson], [Cimarex] shall be solely responsible and assumes liability for all consequences of operations by both parties . . . , including results and all other risks or liabilities incurred in or incident to such operations.*" The contract also stated that "[Cimarex] agrees to adhere to [Patterson]'s [s]afety [p]rogram, [p]rocedures and [p]olicies[,]" and Patterson's safety manual included a provision that every employee had the authority to prevent any co-worker from performing unsafe acts. In addition, Smith, Cimarex's drilling consultant, testified that Plaintiff answered to him while they were on the rig. While Cimarex points to evidence suggesting that Patterson retained responsibility over the blowout preventer, which was what Plaintiff was en route to service at the time of the accident, this evidence simply creates an issue of fact about whether Cimarex had supervisory control over Patterson's operations. In any event, whether Cimarex did or did not have this control is not a determination that could be made by the district court as a matter of law, given the dispute in the evidence.

**{18}** Cimarex's arguments about whether it should have recognized that Plaintiff was fatigued or that his fatigue incapacitated him are not relevant to the question of duty but instead relate to whether Cimarex reasonably exercised the control it had, if any. For example, if on remand the court determines—following the fact finder's conclusions regarding Cimarex's retention of control—that Cimarex owed a duty to Plaintiff, the

6

question becomes whether Cimarex knew or should have known that Plaintiff was incapacitated by fatigue and, if so, whether it should have done something affirmative to address the problem. The extent of control Cimarex had informs the extent to which it should have known anything about Plaintiff's condition or done anything about it. These are questions related to breach of duty and causation.

**{19}** We recognize that this Court in *Fresquez v. Southwestern Industrial Contractors and Riggers, Inc.* stated that "[t]he right in a[n employer] to stop the [independent contractor] from proceeding with the work if dangerous practices are observed, does not carry with it liability to the employees of the very same [independent contractor] causing the dangerous condition." 1976-NMCA-090, ¶ 39, 89 N.M. 525, 554 P.2d 986. However, this statement relates to the question of causation, not the concept of duty. If the evidence showed that it was Patterson alone whose conduct resulted in Plaintiff's incapacitating fatigue, then a jury could assess one hundred percent fault against Patterson.

**{20}** To the extent Cimarex is arguing that, as a matter of law, its failure to recognize the impact of Plaintiff's fatigue did not constitute a breach of duty or did not proximately cause Plaintiff's injuries, we are not persuaded. Plaintiff's evidence created issues of fact on breach and causation. Plaintiff testified at his deposition that Smith knew that he had not had any sleep in twenty-four hours at the time the accident happened. Miguel Aguirre, Patterson's lead tongs floorman, testified that he had worked with Plaintiff in the days preceding the accident and that Plaintiff looked tired and told him he had been up working for two days. Other workers on the rig reported that Plaintiff had looked tired or said he was tired prior to the accident. We "view the facts in a light most favorable to the party opposing summary judgment and draw all reasonable inferences in support of a trial on the merits." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted). Under this standard, Plaintiff has presented evidence giving rise to a reasonable inference that workers on the rig, including Cimarex's consultant, knew or should have known that Plaintiff was fatigued prior to the accident. It is for the jury to decide whether this was in fact the case and, if it was, whether Cimarex's knowledge of Plaintiff's fatigue had anything to do with his accident and injuries.

**{21}** The cases relied on by Cimarex are not helpful to its argument. *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401 (Tex. 2009); *Nat'l Convenience Stores Inc. v. Matherne*, 987 S.W.2d 145 (Tex. Ct. App. 1999). The courts in both cases analyzed the facts before them according to the duty announced in *Otis Engineering Corp. v. Clark*, which holds that only an employer who takes affirmative action over an incapacitated employee because of the employee's incapacitation must exercise reasonable care to prevent the employee from causing an unreasonable risk of harm to others. 668 S.W.2d 307, 311 (Tex. 1983); *see Nabors*, 288 S.W.3d at 403-404; *Nat'l Convenience Stores Inc.*, 987 S.W.2d at 150. Unlike the showing required to invoke the duty found in those cases—evidence of actual knowledge of employee impairment and affirmative exercise of employer control over such impairment—our interpretation of the duty under the circumstances in the present case requires no such showing. Instead, if Cimarex had supervisory control over Patterson, which

7

is a fact question, then Cimarex had a duty to Patterson's employees to exercise that control with reasonable care.

**CONCLUSION**

**{22}** For the foregoing reasons, we reverse summary judgment and remand for proceedings consistent with this opinion.

**{23}    IT IS SO ORDERED.**

 

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**M. MONICA ZAMORA, Judge**

**Topic Index for _Sherman v. Cimarex Energy Co._, No. 32,164**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Summary Judgment

**EMPLOYMENT LAW**
Independent Contractor

**NEGLIGENCE**
Breach of Duty
Duty

**TORTS**
Premises Liability

**WORKERS' COMPENSATION**
Independent Contractor