This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36467**

**TONY F. ORTIZ, as Personal Representative of the ESTATE OF PEDRO MENDOZA, and ELDA MENDOZA ORTEGA,**

       Plaintiffs-Appellants,

v.

**ENERGEN RESOURCES CORPORATION,**

       Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**David K. Thomson, District Judge**

Holt Mynatt Martinez P.C.
Blaine T. Mynatt
Las Cruces, NM

McCleskey, Harriger, Brazill
& Graf, L.L.P.
Marion Sanford III
Lubbock, TX

for Appellants

Holland & Hart LLP
Bradford C. Berge
Julia Broggi
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}** Plaintiffs Tony F. Ortiz, as Personal Representative of the Estate of Pedro Mendoza (Decedent), and Elda Mendoza Ortega appeal from an order granting summary judgment to Defendant Energen Resources Corporation (Energen). The issue presented on this appeal is whether Energen owed a duty to Decedent and whether Energen's alleged negligent breach of such a duty contributed to the death of Decedent. Because we conclude that Energen did not owe Decedent a duty, we need not reach Plaintiffs' causation arguments. We affirm.

**BACKGROUND**

**{2}** Decedent was employed by Professional Well Services (PWS). PWS was an independent contractor that Energen had contracted to perform well maintenance work. On August 6, 2013, Decedent was a member of a PWS crew performing the contracted well maintenance work for Energen at Energen's Jicarilla 107 #8 well location. On that date, Decedent was driving a PWS-owned vehicle on New Mexico State Road 537 that was carrying approximately 17,000 pounds of water. Decedent lost control of the vehicle, the vehicle rolled over, and the cab of the vehicle was crushed. Decedent died at the scene.

**{3}** Plaintiffs sued a number of entities, including Energen, asserting a variety of claims related to the accident. The claims against all parties except Energen were disposed of through settlement or dispositive motion practice. After Plaintiffs had filed their third amended complaint in this matter, Energen filed a motion for summary judgment pursuant to Rule 1-056 NMRA contending that it owed no duty to Plaintiffs. Extensive briefing followed.

**{4}** The district court granted Energen's motion for summary judgment. In doing so, the district court made the following findings of fact in addition to those undisputed facts referenced above: (1) at all relevant times, PWS was an independent contractor to Energen and carried on its work for Energen as an independent contractor; (2) McClellan-Vick Consulting performed consulting services for Energen at the Jicarilla 107 #8 well location; (3) Energen did not control the work at issue or the instrumentality of the injury that was the cause of Decedent's death and Energen did not control the work performed by PWS or McClellan-Vick in that regard; (4) PWS and McClellan-Vick were responsible for their own safety programs; (5) Energen and its employees did not supervise, direct, or control Decedent's work at any time on August 6, 2013; and (6) Energen did not own or control the vehicle, the type of vehicle, the improper use of that vehicle, how the vehicle was designed, where the vehicle went, or the credentials of the driver of the vehicle. Based on its findings, the district court concluded that summary judgment was appropriate for two reasons: (1) Energen did not owe a duty to Decedent; and (2) even if Energen owed Decedent a duty, Plaintiffs could not demonstrate that Energen caused Decedent's death as a matter of law.

**DISCUSSION**

**{5}**     In this appeal, Plaintiffs challenge both of the district court's reasons for granting summary judgment. Plaintiffs' arguments contain multiple lengthy string cites to the record, including a substantial number of record citations that are not material to their arguments, thus complicating our review. However, having reviewed all of the evidence cited by Plaintiffs, we conclude that none of that evidence creates a genuine issue of material fact as to whether Energen owed a duty to Decedent. Because our conclusion with regard to duty is dispositive of this matter, we do not reach Plaintiffs' causation arguments.[1] We address each of Plaintiffs' duty arguments in turn.

## I.     Standard of Review

**{6}**     "In New Mexico, summary judgment may be proper when the moving party has met its initial burden of establishing a prima facie case for summary judgment." *Romero v. Philip Morris, Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280. "By a prima facie showing is meant such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Goodman v. Brock*, 1972-NMSC-043, ¶ 8, 83 N.M. 789, 498 P.2d 676. "Once this prima facie showing has been made, the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Romero*, 2010-NMSC-035, ¶ 10 (internal quotation marks and citation omitted). "A party may not simply argue that such [evidentiary] facts might exist, nor may it rest upon the allegations of the complaint." *Dow v. Chilili Coop. Ass'n*, 1986-NMSC-084, ¶ 13, 105 N.M. 52, 728 P.2d 462.

**{7}**     "Such evidence adduced must result in reasonable inferences." *Romero*, 2010-NMSC-035, ¶ 10. "An inference is not a supposition or a conjecture, but is a logical deduction from facts proved and guess work is not a substitute therefor." *Stambaugh v. Hayes*, 1940-NMSC-048, ¶ 32, 44 N.M. 443, 103 P.2d 640 (citation omitted). "Only when the inferences are reasonable is summary judgment inappropriate." *Romero*, 2010-NMSC-035, ¶ 10. "In addition to requiring reasonable inferences, New Mexico law requires that the alleged facts at issue be material to survive summary judgment. To determine which facts are material, the court must look to the substantive law governing the dispute." *Id.* ¶ 11 (internal quotation marks and citation omitted). "An issue of fact is 'material' if the existence (or non-existence) of the fact is of consequence under the substantive rules of law governing the parties' dispute." *Martin v. Franklin Capital Corp.*, 2008-NMCA-152, ¶ 6, 145 N.M. 179, 195 P.3d 24.

---

[1]While we do not reach Plaintiffs' causation arguments, we take a moment to note that Plaintiffs' brief-in-chief does not contain any explicit analysis of causation. Energen noted that same point in its answer brief and further indicated that all of the evidence cited by Plaintiffs fails to create a dispute regarding any of the material facts. Rather than explaining how the evidence they identified in the brief-in-chief shows a genuine issue of material fact, Plaintiffs used their reply brief to restate general propositions of law and state in conclusory fashion that the last section of the brief-in-chief contained "[a]ll the relevant material facts which support both" duty and causation. Such general arguments are unhelpful. *See Headley v. Morgan Mgmt Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."). We also remind counsel that failure to respond to arguments raised in an answer brief can constitute a concession of the matter. *Delta Automatic Sys., Inc. v. Bingham*, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 P.2d 1174.

**{8}**     Although summary judgment is viewed with disfavor in New Mexico, *Romero*, 2010-NMSC-035, ¶ 8, it "is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971 (internal quotation marks and citation omitted). "Where reasonable minds will not differ as to an issue of material fact, the court may properly grant summary judgment." *Id.* "All reasonable inferences are construed in favor of the non-moving party." *Portales Nat'l Bank v. Ribble*, 2003-NMCA-093, ¶ 3, 134 N.M. 238, 75 P.3d 838. "Summary judgment is reviewed on appeal de novo." *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 8, 139 N.M. 12, 127 P.3d 548.

## II.     We Decline to Address Plaintiffs' Argument Regarding a Common-Law Duty Based on 19.15.34.17(C) NMAC

**{9}**     Plaintiffs first argue that "[t]here can be no question that Energen had a duty to act to allow transportation of produced water and drilling fluid from its well sites only in vehicles and by companies approved by the State of New Mexico to haul such water." *See* 19.15.34.17(C) NMAC ("An owner or operator shall not permit produced water, drilling fluids or liquid oil field waste to be removed from its leases or field facilities, except for small samples removed for analysis, by motor vehicle except by a person possessing an approved form C-133."). While Plaintiffs cite 19.15.34.17(C) NMAC to support their argument, Plaintiffs also couch their argument as a duty arising under common law. Plaintiffs then cite *Lerma v. State Highway Department*, 1994-NMSC-069, 117 N.M. 782, 877 P.2d 1085, in support of the following proposition:

> Even where the intent of the statute or regulation has nothing to do with the type of harm that occurred or class of harmed individuals, if the actions that are required by statute or regulation are not carried out in a reasonable manner and with the exercise of ordinary care for the safety of others, the actor may be found to be negligent for resulting harm.

*Lerma* offers no support for that proposition. Rather, our Supreme Court in *Lerma* concluded that the plaintiff was not owed a statutory duty but rather a common-law duty, separate and apart from the statute the plaintiff had identified. *Id.* ¶¶ 7, 11.

**{10}**     "A duty may exist based on statutory law; based on common law that has created an affirmative duty toward a specific individual or group of individuals; or based on a general negligence standard, which requires an individual to exercise reasonable care in his dealings and activities with the public." *Lessard v. Coronado Painting & Decorating Ctr., Inc.*, 2007-NMCA-122, ¶ 30, 142 N.M. 583, 168 P.3d 155. Here, Plaintiffs' argument based on 19.15.34.17(C) NMAC blurs the line between those distinct categories by attempting to create a common law duty based on a duty arising out of a statute. Such an argument is contrary to law and is not supported by the authority Plaintiffs cite. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal."). Accordingly, we decline to further address this argument.

**III.     Any Duty Energen Owed Decedent Regarding Its Hiring of Independent Contractors Is Irrelevant Under These Facts and Circumstances Because PWS Was Not Hired to Haul Water**

**{11}**   Plaintiffs make two arguments that are related to an employer or general contractor's duties based on hiring of independent contractors. First, citing Restatement (Second) of Torts Section 411 (1965) (Section 411), Plaintiffs argue that Energen had a duty to employ a competent and careful contractor that it would be entrusting with the potentially hazardous work. Second, citing *Tafoya v. Rael*, 2008-NMSC-057, 145 N.M. 4, 193 P.3d 551, Plaintiffs argue that Energen had a duty to ensure that PWS was properly licensed for the work PWS was hired to do. For the reasons that follow, we are not persuaded that the facts of this case give rise to a duty under either legal theory.

**A.     Energen Did Not Owe Decedent a Duty Under Section 411**

**{12}**   Section 411 provides:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons.

While Section 411 has been expressly adopted into New Mexico's tort law, *Talbott v. Roswell Hospital Corp.*, 2008-NMCA-114, ¶ 12, 144 N.M. 753, 192 P.3d 267, we are not persuaded that employees of independent contractors are included in those owed a duty under Section 411. We explain.

**{13}**   In *Montanez*, our Supreme Court considered whether Sections 413, 416, and 427 of the Restatement (Second) of Torts (1965) applied to employees of independent contractors. *N.M. Elec. Serv. Co. v. Montanez*, 1976-NMSC-028, ¶ 15, 89 N.M. 278, 551 P.2d 634. Our Supreme Court explained that "a special note to Chapter 15 of Tentative Draft No. 7 of the Restatement (Second) of Torts" specifically excluded employees of independent contractors from coverage by Restatement (Second) of Torts Sections 410-429. *Montanez*, 1976-NMSC-028, ¶ 15. Our Supreme Court noted that many courts have found the special note "persuasive and have used it to exclude employees of independent contractors" despite the special note not being adopted in the finalized Restatement (Second) of Torts. *Montanez*, 1976-NMSC-028, ¶ 15. Our Supreme Court adopted the exclusionary approach for Sections 413, 416, and 427, and justified its position in two points:

> 1.     The principal reason for the development of the doctrine of liability of an employer of an independent contractor engaged in inherently dangerous work is to prevent the employer from escaping liability to others or shifting that liability to an independent contractor. In the case of industrial accidents, the vast majority are covered by Workmen's

Compensation laws and to that extent the employer of the independent contractor does not escape or shift liability since the employer, in effect, pays the premium for Workmen's Compensation coverage.

2.      There does not seem to be any valid reason why an employer of an independent contractor for the performance of specific work should be subjected to a greater liability than he would have if he had utilized his own employees on that particular work.

*Id.*

**{14}**    We believe that approach is applicable here for three reasons. First, Plaintiffs have not advanced any argument as to why Energen, under these circumstances, "should be subjected to a greater liability than he would have if he had utilized his own employees on that particular work." *Id.* Second, we note that our Supreme Court has stated that Section 411, among other sections also pertaining to "situations in which the general contractor can be liable to third parties[,]" is not a "useful framework" for analyzing "the duty owed by a general contractor directly to an independent contractor." *Tafoya*, 2008-NMSC-057, ¶ 13. Third, we are unaware of any binding authority that indicates Section 411 applies to the employees of independent contractors and Plaintiffs have not cited any. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

**{15}**    Even if Section 411 applies to the employees of independent contractors, we are not persuaded that it would be applicable here because Plaintiffs have not identified any evidence that suggests Energen hired PWS to haul water from Energen's Jicarilla 107 #8 well location. Rather, as Plaintiffs admitted in their summary judgment briefing to the district court and their briefing to this court, Energen hired PWS to perform a pump replacement. Additionally, the owner of PWS, Ramon DeSotto, testified in his deposition that he was not a water hauler and did not haul fluids. Mr. DeSotto further testified that the vehicle Decedent was driving at the time of the accident was "a pump" that was to be emptied before moving. Furthermore, Energen presented undisputed evidence that it had hired a different independent contractor, B&B Services, to haul water from Energen's Jicarilla 107 #8 well location. Based on the evidence in the record, we cannot say that Energen hired PWS to haul water.

**{16}**    For these reasons, we conclude that Energen owed no duty to Decedent under Section 411.

## B.    Energen Did Not Owe Decedent a Duty Under *Tafoya*

**{17}**    In *Tafoya*, the general contractor hired an independent contractor to do specified work despite the general contractor knowing that independent contractor was not licensed or qualified to do the work. 2008-NMSC-057, ¶ 4. The independent contractor violated OSHA regulations and industry safety standards while performing the work,

which resulted in a trench collapsing and asphyxiating the independent contractor. *Id.* ¶ 5. The independent contractor's widow's suit against the general contractor was dismissed after the district court granted summary judgment, finding that the general contractor did not owe any duty to the independent contractor. *Id.* ¶ 7. The Court of Appeals affirmed. *Id.* ¶ 8.

**{18}** Our Supreme Court granted certiorari to determine whether a general contractor owes a duty to the independent contractor to ensure that the independent contractor is licensed and qualified to perform dangerous work. *Id.* ¶ 10. Looking to the Construction Industries Licensing Act, NMSA 1978, §§ 60-13-1 to -59 (1967, as amended through 2019), and its corresponding regulations, the Court concluded the policy expressed by our Legislature is that construction contractors be licensed and qualified to do the work they are hired to perform. *Tafoya*, 2008-NMSC-057, ¶¶ 16-17. The Court further concluded that such a policy would best be served by imposing a duty on general contractors, so "both the general contractor and the unlicensed independent contractor will share the risk of their own negligence." *Id.* ¶ 19.

**{19}** Here, as fully discussed in the preceding subsection, Plaintiffs have not directed this Court to any evidence that indicates that Decedent's employer, PWS, was hired by Energen to haul water from Energen's Jicarilla 107 #8 well location. Rather, the undisputed evidence is that Energen hired B&B Services to haul water. We cannot see how it would further any policy to require Energen to ensure that its independent contractors are licensed for work that they are not hired to perform. Therefore, we conclude that Energen did not owe Decedent the duty identified in *Tafoya*.

## IV. Energen Did Not Owe Decedent a Duty Under Restatement (Second) of Torts Section 414 (1965)

**{20}** Plaintiffs additionally argue that Energen retained "supervisory control over the independent contractor." Therefore, under Restatement (Second) of Torts Section 414 (Section 414), Plaintiffs contend that Energen owed Decedent a duty to exercise that control with reasonable care.

**{21}** "[G]enerally, the employer of an independent contractor is not liable for injuries to an employee of the independent contractor[.]" *Valdez v. Cillessen & Son, Inc.*, 1987-NMSC-015, ¶ 21, 105 N.M. 575, 734 P.2d 1258. "The rationale underlying the rule is that the independent contractor, free to achieve a legal result (set by the employer) by any means it chooses, bears the risk should that operation, negligently performed, cause physical harm to others." *Sherman v. Cimarex Energy Co.*, 2014-NMCA-026, ¶ 8, 318 P.3d 729 (alteration, internal quotation marks, and citation omitted). One exception to this general rule is "where the employer retains control over the independent contractor's performance of its work." *Id.* This exception arises from Section 414, which provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to

others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

While this section contains a similar "harm to others" phrase as the sections discussed above, New Mexico courts have interpreted Section 414's language "to include the employees of independent contractors." *Montanez*, 1976-NMSC-028, ¶ 17.

**{22}** Comment a to Section 414 indicates that an employer may be liable under this section "unless [the employer] exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others." This is so even when the employer "retain[s] only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others." *Id.* This Court has interpreted this comment to mean that "the employer owes a duty to an employee of an independent contractor if the employer has some kind of supervisory control over the independent contractor[.]" *Sherman*, 2014-NMCA-026, ¶ 9.

**{23}** Our case law has not answered "how much control the employer must have before it has a duty to an independent contractor's employee. Instead, our cases have simply left the matter up to the fact finder *if the evidence created issues about how much control the employer had*." *Id.* ¶ 13 (emphasis added). However, comment c to Section 414 provides some guidance: It is not enough for an employer to have "merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations." *Sherman*, 2014-NMCA-026, ¶ 14. Rather, "there must be such a retention of a right of supervision that the contractor is not entirely free to do the work in [the contractor's] own way." *Id.* (alteration, internal quotation marks, and citation omitted).

**{24}** To answer whether Energen owed Decedent a duty, "the parties must introduce evidence of the extent of the employer's control over the independent contractor's operations." *Id.* ¶10. We recognize that this is a fact driven inquiry that often is not easily resolved by summary judgment. *Pollard v. Westinghouse Elec. Corp.*, 1995-NMCA-038, ¶¶ 6, 8, 119 N.M. 783, 895 P.2d 683 (stating that analyzing "the kind of control either retained or exercised by [the employer] over the work performed by [the independent contractor] . . . is primarily a fact-based question which does not lend itself easily to resolution by summary judgment" and reversing the grant of summary judgment to the employer where there were issues of fact regarding the extent of the employer's control); *see Valdez*, 1987-NMSC-015, ¶ 27 (reversing a grant of summary judgment where there were issues of fact regarding the extent of the employer's control); *Sherman*, 2014-NMCA-026, ¶ 17 (concluding that "whether [the employer] did or did not have [supervisory] control is not a determination that could be made by the district court as a matter of law, given the dispute in the evidence"). However, as we explain below, Plaintiffs have failed to identify any genuine issue of material fact relevant to whether Energen exercised supervisory control.

**{25}** In their briefing to this Court, Plaintiffs argue that Energen retained supervisory control over PWS and cite to numerous facts in the record. Much of the evidence cited by Plaintiffs has no relation to the question of supervisory control. Furthermore, the evidence that is arguably related to the question of supervisory control does not relate to Energen. Rather, the arguably relevant evidence relates to the actions of another of Energen's independent contractors, McClellan-Vick. Even if we were to accept that McClellan-Vick exerted supervisory control over PWS, Plaintiffs do not develop any argument as to why McClellan-Vick's supervisory control should create a duty for Energen in this case. *See Headley*, 2005-NMCA-045, ¶ 15 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."). We also note that none of the evidence cited by Plaintiffs suggests that Energen was exercising supervisory control over McClellan-Vick, which further attenuates Plaintiffs' argument. Accordingly, based on the evidence identified by Plaintiffs, we cannot conclude that a dispute of material fact precluded the district court from concluding as a matter of law that Energen did not owe Decedent a duty under Section 414.

## CONCLUSION

**{26}** We affirm.

**{27}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**