**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2020-NMCA-033**

**Filing Date: January 28, 2020**

**No. A-1-CA-36044**

**TODD LOPEZ, as Personal
Representative of the ESTATE
OF FERNANDO FLORES, and
CATALINA FLORES RICO,**

       Plaintiffs-Appellants,

v.

**DEVON ENERGY PRODUCTION
COMPANY, L.P.,**

       Defendant-Appellee,

**and**

**MCVAY DRILLING CO. and
ARMANDO ARENIVAS,**

       Defendants,

_____

**ACUITY, a mutual insurance company,**

       Plaintiff-In-Intervention,

v.

**TODD LOPEZ, as Personal
Representative of the ESTATE
OF FERNANDO FLORES; CATALINA
FLORES RICO; MCVAY DRILLING
CO.; ARMANDO ARENIVAS; DEVON
ENERGY PRODUCTION COMPANY, L.P.;
BATTLE ENERGY CORP.; PLASTER &
WALD CONSULTING, CORP.; BRUCE**

**HOLMAN; SIERRA ENGINEERING, LLC; and ALLEN WHITEPLUME,**

Defendants-In-Intervention.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**David K. Thomson, District Judge**

Certiorari Denied, April 28, 2020, No. S-1-SC-38161. Released for Publication August 11, 2020.

Sanders & Westbrook PC
Maureen A. Sanders
Albuquerque, NM

Wray & Girard, PC
Katherine Wray
Albuquerque, NM

for Appellants

Hinkle Shanor LLP
Andrew J. Cloutier
Roswell, NM

McGuire Woods LLP
Samuel L. Tarry, Jr.
Richard C. Beaulieu
Richmond, VA

for Appellee

## OPINION

**B. ZAMORA, Judge.**

**{1}** Plaintiffs Todd Lopez, in his capacity as the personal representative of the Estate of Fernando Flores, and Catalina Flores Rico (collectively, the Estate) sued Defendant Devon Energy Production Co., L.P. and others not parties to this appeal for the wrongful death of Fernando Flores, who was electrocuted while working for a subcontractor of Defendant. Following a trial on the merits, a jury returned a verdict of "no negligence" and the district court entered judgment for Defendant. This appeal followed.

**{2}** The Estate contends the district court erred by failing to instruct the jury that Defendant owed duties of care to the decedent, failing to admit certain evidence and improperly excluding other evidence, and permitting Defendant to engage in an

improper and prejudicial closing argument. Defendant contends the Estate failed to preserve the errors complained of, the district court did not commit reversible error, and the Estate cannot demonstrate prejudice. Concluding the district court erred in instructing the jury, we reverse and remand for a new trial.

**BACKGROUND**

**{3}** This case arises from an accident on May 23, 2013, that caused the death of Fernando Flores. At the time of the accident, Defendant had just concluded drilling at a wellsite in New Mexico known as Antares 23 4H well site (Antares 23). Defendant had engaged several subcontractors to undertake the project, including McVay Drilling Co. (McVay) and Battle Energy Services (Battle). McVay provided drilling services for Defendant, using its own rigging equipment. Battle provided "rigging down" services, a process of dismantling the drilling rig so that it may be moved to a different location. On the day of the accident, Mr. Flores was working for Battle as a helper, a position known in the industry as a "swamper."

**{4}** After completing drilling at Antares 23, Defendant planned to drill at Aquila 22, a site located a short distance away. In preparation for the transfer of drilling operations, Defendant engaged Battle to provide "nipple-down services" for a blowout preventer (BOP) attached to the rig at Antares 23. In the nippling down process, a team removes the BOP from the rig and relocates it to the edge of the current wellsite. In a typical rig move, a second contractor then moves the BOP and other components of the rig from their location on the old wellsite to the new wellsite using a flatbed truck.

**{5}** On the day of the accident, two teams of Battle employees removed the BOP from the head of the rig and secured it to the hitch of a gin-pole truck. A gin-pole truck is a vehicle equipped with an A-frame style crane that can be raised or lowered as needed. The crane was in the raised position to allow it to hold and transport the attached BOP. A member of one of the Battle teams, Luis Perez Pinon, then began driving the truck to the edge of the wellsite, while Mr. Flores walked behind to ensure the BOP remained stable, was not damaged by the move, and did not cause the truck to tip.

**{6}** While the truck was moving, a McVay employee, Armando Arenivas, instructed Perez to transport the BOP to Aquila 22, instead of to the edge of Antares 23 as originally planned. Arenivas was McKay's "toolpusher"—the second-in-command on the wellsite behind the "company man[,]" who supervised operations on behalf of Defendant. Perez testified that he initially resisted Arenivas' instruction, because it contradicted the instruction of his crew chief, and because he was not trained to transport a BOP offsite. However, after speaking with the Battle crew chief, Perez acquiesced to Arenivas and began driving the gin-pole truck toward Aquila 22 along a road, as Mr. Flores continued to walk behind it. As the truck approached the entrance to Aquila 22, the extended crane struck an overhead power line and Mr. Flores was electrocuted.

**{7}**     The Estate brought a wrongful death action against Arenivas and McVay, and later amended its complaint to add Defendant.[1] The complaint alleged negligence by all defendants and sought damages for wrongful death, intentional infliction of emotional distress, and loss of consortium, as well as punitive damages. The allegations against Defendant were grounded in theories of vicarious and direct liability and specifically identified claims of premises liability and negligent supervision. The Estate settled with McVay and Arenivas prior to trial. Following a six-day trial, the jury returned a verdict in favor of Defendant, and the Estate appealed.

## DISCUSSION

### I.     The Jury Instructions

**{8}**     The Estate argues the district court erred by failing to instruct the jury that Defendant owed Mr. Flores duties, "pursuant to the Restatement[] [(Second) of Torts]." They contend that, under *Rodriguez v. Del Sol Shopping Center Associates, L.P.*, 2014-NMSC-014, 326 P.3d 465, the district court should have decided the duty question as a matter of law, instructed the jury that Defendant owed duties to Mr. Flores, and "submitted all related factual disputes as questions of breach of those duties." Defendant argues that the Estate is estopped from arguing that the duty question should have been decided by the district court because the Estate relied on authorities calling for fact-based determinations of duty in its opposition to Defendant's motion for summary judgment. Defendant further argues *Rodriguez* is not as sweeping as the Estate contends, and it merely stands for the proposition that foreseeability analysis should be assigned to the jury, not that all duty determinations should be rendered by the court.[2] Finally, Defendant contends that, even if the instructions were in error, the Estate cannot demonstrate prejudice.

**{9}**     We review jury instructions de novo, seeking to determine whether the instructions correctly stated the law and were supported by the evidence presented at trial. *Benavidez v. City of Gallup*, 2007-NMSC-026, ¶ 19, 141 N.M. 808, 161 P.3d 853. "The purpose of instructions is to enlighten the jury." *Gerrard v. Harvey & Newman Drilling Co.*, 1955-NMSC-034, ¶ 23, 59 N.M. 262, 282 P.2d 1105. "An instruction is correct, and thus proper to submit to a jury, when the instruction is consistent with the law and articulates fairly, completely, and succinctly the relevant law applicable to the facts[.]" *Mireles v. Broderick*, 1994-NMSC-041, ¶ 15, 117 N.M. 445, 872 P.2d 863 (citation omitted). We will affirm "if, as a whole, [the instructions] fairly represent the law applicable to the issue in question." *Kennedy v. Dexter Consol. Sch.*, 2000-NMSC-025, ¶ 28, 129 N.M. 436, 10 P.3d 115.

---

1The Estate subsequently amended its complaint to name additional defendants, who were dismissed prior to trial and who are not parties to this appeal.

2We note that Defendant, save for a two-sentence footnote, seems to abandon on appeal its position advanced below that it owed no duty to Mr. Flores. Given this undeveloped argument, we do not consider it further. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

**A.    The Estate Is Not Estopped From Arguing the Duty Issue on Appeal**

**{10}**    We first consider Defendant's argument that the Estate should be estopped from arguing duty is a question of law to be decided by the district court because, in response to Defendant's motion for summary judgment, the Estate relied on New Mexico authorities that "based duties for the controllers of land or employers of independent contractors on several sections of the Restatement (Second) of Torts [Sections] 343, 411, and 414 [(Am. Law Inst. 1965)]." According to Defendant, because the determination of duties under these authorities is "necessarily based on case-specific facts[,]" the Estate's earlier reliance upon them precludes its argument on appeal that the district court erred in failing to instruct the jury on duty. The Estate asserts that it argued "[t]he [district] court should decide the duty question" and crafted proposed jury instructions "reflect[ing] its position that the jury should not be instructed to determine duty[,]" adequately preserving the issue for appeal. We agree with the Estate.

**{11}**    The record reflects that the Estate argued repeatedly below that the determination of a duty of care is a matter for the district court to decide. The record also reflects that the Estate first submitted instructions based on the Uniform Jury Instructions (UJIs) before crafting instructions based on sections of the Restatement (Second) of Torts in response to the district court's statement that it was inclined to "stick with the Restatement with regard to these duties." Indeed, the Estate asserted that it preferred the UJIs over the Restatement language in part because the latter failed to adequately distinguish determinations of duty, breach, and liability. There is no question that the district court was sufficiently alerted to the parties' arguments and disagreements about whether the jury or court decides the question of duty and the nature and source of the duty owed by Defendant to Mr. Flores. Based on our review of the record, the district court was fully aware of the issues presented and took full advantage of the parties' arguments prior to making its rulings. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). Accordingly, the Estate adequately preserved its argument that duty should be decided as a matter of law through its arguments and proffered instructions. It cannot be estopped from raising the issue simply because it argued that issues of fact precluded summary judgment using the few authorities available to it in New Mexico involving similar factual scenarios.

**B.    The Instructions Did Not Accurately Reflect New Mexico Law on the Question of Duty**

**{12}**    We next determine whether the jury instructions accurately reflected New Mexico law on the issues of duty and breach of duty under the circumstances of this case. Because the Estate had settled with McVay and Arenivas, its vicarious claims arising under the doctrine of respondeat superior were no longer viable and only its direct liability claims against Defendant remained at trial. Accordingly, our analysis addresses only the law governing the determination of duty under direct liability theories of negligence.

**{13}** The district court issued thirty-seven jury instructions, five of which relate to the question of whether Defendant owed Mr. Flores a duty of care. Instruction 16 stated, "[g]enerally speaking, the employer of an independent contractor is not liable for injuries to an employee of the independent contractor" and that exceptions to the rule would follow in subsequent instructions. Instructions 17, 18, and 19 explained the three exceptions, tracking Restatement (Second) of Torts rules governing premises liability (Restatement (Second) of Torts Section 343), negligent selection of a contractor (Restatement (Second) of Torts Section 411), and negligence in exercising retained control (Restatement (Second) of Torts Section 414), respectively. Instruction 21 included language from the UJI for the general duty of ordinary care. *See* UJI 13-1604 NMRA.

**{14}** The duty instructions were the end product of numerous discussions during the hearing on Defendant's motion for summary judgment, the arguments offered during trial on Defendant's motion for directed verdict, and the jury instruction conferences held after the close of evidence. The nature of the duty owed—if any—by Defendant was discussed in detail at each stage of the case. For example, in denying Defendant's motion for a directed verdict, the district court explained its inclination to frame the Estate's claims as potential exceptions to the no-duty rule governing contractors stating:

> [*Sherman v. Cimarex Energy Co.*, 2014-NMCA-026, ¶ 8, 318 P.3d 729,] lays out the general rule in the case, which I am applying: "Generally speaking, the employer of an independent contractor is not liable for injuries to an employee of an independent contractor.". . . I disagree with [the Estate] that we lump this into a negligence basket. I think the obligation is a little separate than the claim made here and the general rules to be followed absent the exceptions, which I have provided.

At the jury instruction conference, Defendant proposed a modified uniform instruction defining "independent contractor[,]" UJI 13-404 NMRA, along with several non-uniform instructions concerning the liability of hirers of independent contractors. The Estate did not propose language concerning independent contractors and instead submitted UJIs on premises liability, negligence per se, negligent hiring, supervision, and retention. *See* UJI 13-1309 NMRA; UJI 13-1501 NMRA; UJI 13-1647 NMRA. The Estate stated it would agree to an instruction defining independent contractor, provided the instructions on duty "stay[ed] with the [UJI]s."

**{15}** Having earlier stated that it would frame the Estate's claims in terms of the Restatement (Second) of Torts Sections 343, 411, and 414, the district court approached the parties' proposed instructions in terms of their comportment with those provisions. However, the court noted that it had found little guidance in New Mexico authorities on the proper formulation of jury instructions in such circumstances:

> The duty, as I read the cases, *Talbott* [*v. Roswell Hospital Corp.*, 2008-NMCA-114, 144 N.M. 753, 192 P.3d 267], I guess is one of the few—I think it's *Talbott* that talks about the actual jury instructions on these. In

the other cases I've read, it's you should stick with the Restatement with regard to these duties, so that is what I'm inclined to do.

The resulting instructions combined elements of the rules from the Restatement (Second) of Torts with language from New Mexico case law bearing on the liability of hirers of contractors and subcontractors. The Estate contends the district court's order to craft instructions based on the sections of the Restatement (Second) of Torts was "contrary to the New Mexico Supreme Court's determination in *Rodriguez*[, 2014-NMSC-014, ¶ 25, that] duty is [a question of law] to be determined based on policy considerations."

**{16}**    New Mexico courts have long held that duty is a matter of law to be determined by the court. *See Tafoya v. Rael*, 2008-NMSC-057, ¶ 11, 145 N.M. 4, 193 P.3d 551; *Lester ex rel. Mavrogenis v. Hall*, 1998-NMSC-047, ¶¶ 9-10, 126 N.M. 404, 970 P.2d 590. This is in part because determinations of duty, including limited-duty and no-duty determinations, are a function of policy and courts are better positioned than juries to make policy determinations in light of "legal precedent, statutes, and other principles comprising the law." *Calkins v. Cox Estates*, 1990-NMSC-044, ¶ 8, 110 N.M. 59, 792 P.2d 36.

**{17}**    Our Supreme Court reaffirmed and elaborated upon these principles in *Rodriguez*. 2014-NMSC-014, ¶¶ 1, 5-10, 22-25; *see also Oakey, Estate of Lucero v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶ 22, 399 P.3d 939 (quoting *Rodriguez* for the proposition that " 'courts should focus on policy considerations when determining the scope or existence of a duty of care' "). In *Rodriguez*, the Court examined the question of what duty of care applied to claims arising from a vehicle crash into the front glass of a medical clinic located in a shopping center. 2014-NMSC-014, ¶¶ 2-3. The crash killed three people and injured several others, and the plaintiffs sued the owners and operators of the shopping center, alleging negligence based on premises liability. *Id.* ¶ 2. The original actions were dismissed by two separate district courts on the grounds that no duty existed as a matter of law because the accident was not foreseeable. *Id.*

**{18}**    This Court affirmed dismissal "not based on the foreseeability-driven duty analysis employed by the district courts, but based on the policy-driven duty analysis advanced by the Restatement (Third) of Torts[.]" *Rodriguez v. Del Sol Shopping Ctr. Assoc., L.P.*, 2013-NMCA-020, ¶ 1, 297 P.3d 334, *rev'd on other grounds*, 2014-NMSC-014. We noted that New Mexico courts had moved away from the foreseeability rule embraced by Chief Judge Cardozo in *Palsgraf v. Long Island Railroad Co.*, 162 N.E. 99 (N.Y. 1928), toward the minority approach advocated by Judge Andrews, which would have imposed a general duty of care limited only by policy imperatives. *Rodriguez*, 2013-NMCA-020, ¶¶ 6-10. However, we asserted that foreseeability continued to play some role in determining duty, based on our Supreme Court's holding in *Edward C. v. City of Albuquerque*, 2010-NMSC-043, ¶ 18, 148 N.M. 646, 241 P.3d 1086, *overruled on other grounds by Rodriguez*, 2014-NMSC-014.

**{19}** Our Supreme Court in *Rodriguez* agreed that we had properly framed the duty analysis as a question of policy, but found that we had erred in relying upon some determinations of foreseeability in applying the framework. 2014-NMSC-014, ¶¶ 3, 24. Importantly, the Court indicated that it disapproved of courts engaging in foreseeability analyses in making no-duty or modified-duty determinations because doing so "often leads toward a discussion of the facts in a particular case" and therefore "is not a discussion of policy." *Id.* ¶ 13. Such an approach, the Court reasoned, "is inconsistent with the Restatement [(Third) of Torts] approach[.]" *Id.*

**{20}** Defendant would have us read *Rodriguez* solely for the proposition that foreseeability should not be part of a court's duty analysis. The Estate's position is that *Rodriguez* requires courts to determine the existence of duties as a matter of law based on policy determinations and that, to the extent liability is dependent upon case-specific facts, those factual determinations should be sent to the jury as questions of breach or causation. We conclude that Defendant's interpretation is too narrow and the Estate's is too broad. *Rodriguez* affirms New Mexico's adoption of the duty framework of the Restatement (Third) of Torts. That framework establishes a general duty of care, which fundamentally alters the approach New Mexico courts should take in determining the duty owed by hirers of contractors. But that change does not necessarily mean all prior case law is simply swept away. We explain.

**{21}** *Rodriguez* is one in a line of cases marking the progressive adoption of modern tort doctrine by New Mexico courts, with important consequences for the determination of duty. In *Scott v. Rizzo*, 1981-NMSC-021, ¶ 15, 96 N.M. 682, 634 P.2d 1234, *superseded by statute as stated in Safeway, Inc. v. Rooter 2000 Plumbing & Drain SSS*, 2016-NMSC-009, ¶ 18, 368 P.3d 389, for instance, our Supreme Court adopted comparative fault principles, holding that "the contributory negligence rule ha[d] long since reached [the] point of obsolescence[.]" In *Klopp v. Wackenhut Corp.*, 1992-NMSC-008, ¶¶ 10-12, 113 N.M. 153, 824 P.2d 293, the Court held that the "open and obvious danger" doctrine would no longer act as a bar to premises liability, and in *Ford v. Board of County Commissioners of County of Doña Ana*, 1994-NMSC-077, ¶¶ 8, 12, 118 N.M. 134, 879 P.2d 766, it also rejected the traditional, status-based scheme of premises liability—a scheme the United States Supreme Court had decried as a "semantic morass" grounded in "a heritage of feudalism." *Id.* ¶ 8 (internal quotation marks and citation omitted). In each of these cases, our Supreme Court rejected traditional doctrines that foreclosed recovery for entire categories of plaintiffs in favor of broad negligence principles that define the duty of care in terms of the risks posed by an actor's conduct. *See Ford*, 1994-NMSC-077, ¶ 12 (holding that "[a] landowner or occupier of premises must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk"); *Scott*, 1981-NMSC-021, ¶ 29 (stating that comparative negligence "holds all parties fully responsible for their own respective acts to the degree that those acts have caused harm"); *see also Klopp*, 1992-NMSC-008, ¶ 12 (stating that "[s]imply by making hazards obvious to reasonably prudent persons, the occupier of premises cannot avoid liability

to a business visitor for injuries caused by dangers that otherwise may be made safe through reasonable means").

**{22}** The broader, more generally applicable concept of duty found in cases such as *Scott*, *Klopp*, and *Ford* is reflected in Section 7(a) of the Restatement (Third) of Torts (Am. Law Inst. 2010): "An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." Subsection (b) of that provision establishes that this presumption of duty may be modified or eliminated by a court "when an articulated countervailing principle or policy warrants [doing so] in a particular class of cases[.]" Restatement (Third) of Torts § 7(b).

**{23}** In *Rodriguez*, our Supreme Court embraced this duty framework. *See* 2014-NMSC-014, ¶ 1. While the role of foreseeability analysis was undoubtedly the central issue in *Rodriguez*, the Court spoke clearly about the proper approach courts should take in examining duty as a matter of law, emphasizing conformity with the Restatement (Third) of Torts' approach. 2014-NMSC-014, ¶¶ 8-9, 11-13, 16, 23. Because the *Rodriguez* Court "overrule[d] prior cases insofar as they conflict with this opinion's clarification of the appropriate duty analysis in New Mexico[,]" *id.* ¶ 3, the question before this Court today is whether the district court's approach in instructing the jury on duty can be reconciled with the Restatement (Third) of Torts Section 7 framework.

**{24}** In this case, Defendant was engaged in drilling for oil, an activity that undoubtedly creates a risk of harm to others if not undertaken with due care. *See Tipton v. Texaco, Inc.*, 1985-NMSC-108, ¶¶ 27-28, 103 N.M. 689, 712 P.2d 1351; *Hinger v. Parker & Parsley Petroleum Co.*, 1995-NMCA-069, ¶¶ 4-8, 22, 120 N.M. 430, 902 P.2d 1033. Pursuant to the framework endorsed in *Rodriguez*, this imposed upon Defendant a duty to exercise ordinary care. *See* Restatement (Third) of Torts § 55 cmt. a  (Am. Law Inst. 2012) ("When an actor hires an independent contractor for an activity that creates a risk of physical harm, the actor is subject to [Section] 7.").

**{25}** The Restatement (Third) of Torts, like the Restatement (Second) of Torts, includes specific rules for the hirers of independent contractors, recognizing the policy-based modifications of duty that arose under the Restatement (Second) of Torts' approach. However, the Restatement (Second) of Torts' approach is grounded in a "general principle" that, subject to numerous exceptions, one who hires an "independent contractor is not liable for physical harm caused" by the contractor. Restatement (Second) of Torts § 409 (Am. Law Inst. 1965). In contrast, the Restatement (Third) of Torts begins with the imposition of a general duty of care and then crafts limitations based on "considerations of policy and principle that warrant limiting the duty of care owed by the hirer." Restatement (Third) of Torts § 55 cmt. a.

**{26}** Instruction 16 framed the jury instructions on the Estate's theories of liability as exceptions to a general rule exempting hirers of independent contractors from liability. It stated: "Generally speaking, the employer of an independent contractor is not liable for injuries to an employee of the independent contractor. As with any general rule, however, there are exceptions. I will explain three of those exceptions to you in

subsequent instructions." In drafting this instruction, the district court relied in part on language found in *Sherman*, a case decided prior to *Rodriguez*. *See Sherman*, 2014-NMCA-026, ¶ 8 ("Generally speaking, the employer of an independent contractor is not liable for injuries to an employee of the independent contractor." (internal quotation marks and citation omitted)). In *Sherman*, we noted "there are exceptions" to the rule that hirers of independent contractors are generally not liable for injuries to employees of the contractor, including (1) where the hirer of the contractor controls the premises on which the work is performed; and (2) where the hirer retains control over the independent contractor's performance of the work. *Id.* The district court in this case then added a third "exception" to the rule: a hirer may be subject to liability for negligence in hiring or supervising an independent contractor. *See* Restatement (Second) of Torts § 411.

**{27}** This framing of the instructions was in error. Consistent with Restatement (Third) of Torts, while the instruction on retained control was properly framed as an exception to a rule of no liability for hirers of contractors, *see* Restatement (Third) of Torts § 56 (Am. Law Inst. 2012), the instructions on premises liability, *see* Restatement (Third) of Torts § 51 (Am. Law Inst. 2012), and negligent selection/retention, *see* Restatement (Third) of Torts § 55, should not have been described as exceptions to a no-liability rule of law. We address each instruction in turn.

**1.    Premises Liability**

**{28}** Instruction 17 stated:

The first exception applies if Plaintiffs prove by a preponderance of evidence the following:

[Defendant] is subject to liability for physical harm caused to its invitees by a condition on the land if, but only if, Plaintiffs prove that [Defendant]:

(a)    knew or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b)    should have expected that it will not discover or realize the danger, or would have failed to protect themselves against it, and

(c)    failed to exercise reasonable care to protect them against the danger.

The extent of the duty owed by [Defendant] varies according to the visibility or the obviousness of the potential jobsite hazard and according to the degree of control [Defendant] exercised over the premises.

Instruction 17 hewed closely to Restatement (Second) of Torts Section 343, although the last paragraph was drawn from *Tipton*, 1985-NMSC-108, ¶ 20. In *Tipton*, our Supreme Court reversed a district court decision dismissing a well site operator's third-party claims against several contractors, holding that the jury should have been instructed to determine the extent of the operator's control over the worksite and the work of the contractors to determine whether they should be subject to liability for an employee's injuries. *Id.* ¶¶ 6, 28. Although the Court in *Tipton* sometimes described the relevant inquiry in terms of liability and sometimes in terms of duty, the language quoted by the district court in Instruction 17 concerned duty. *Id.* ¶ 20.

**{29}** At the conclusion of trial, the Estate's theory of premises liability was that a condition on the land—the power lines—posed a risk of harm to Mr. Flores, and that, in its capacity as the land possessor, Defendant owed duties of care to Mr. Flores as it did to all visitors. The parties understood this claim to arise under Restatement (Second) of Torts Section 343. The Estate did not claim that either McVay or Battle created the dangerous condition—this would have been advanced under Restatement (Second) of Torts Section 414. Had the latter been the case, an instruction describing Defendant's duties as an exception to the general rule that landowners are not liable for dangerous conditions created by subcontractors would have been appropriate. *See* Restatement (Third) of Torts § 51 cmt. g ("Ordinarily, a possessor of land does not owe a duty of reasonable care for risks arising from the conduct of transients and independent contractors while on the possessor's land."). Instead, the Estate was asserting a direct premises liability claim, which under Restatement (Third) of Torts is based on "a specific application of [Restatement (Third) of Torts Section 7(a)]." Restatement (Third) of Torts § 51 cmt. b. It was therefore error to describe Defendant's duties as an exception to a no-liability rule.

**{30}** The error was compounded by the district court's inclusion of language from *Tipton*. The reference to the visibility and obviousness of hazards invoked the jury's consideration of foreseeability in the determination of Defendant's duties, which was clearly improper under *Rodriguez*. *See* 2014-NMSC-014, ¶ 4. Put simply, if the land posed a danger to visitors, Defendant owed a duty of care. *See* Restatement (Third) of Torts § 51; *see also* UJI 13-1309 ("An [owner] [occupant] owes a visitor the duty to use ordinary care to keep the premises safe for use by the visitor[, whether or not a dangerous condition is obvious].". If the district court determined that Defendant's duty ought to have been modified or limited based on its status as a hirer of independent contractors, the court was required to make that determination based on policy considerations and not the foreseeability of the risk of harm or the openness or obviousness of the hazards. *See Rodriguez*, 2014-NMSC-014, ¶¶ 1, 4; *see also* Restatement (Third) of Torts § 51 cmt. k ("[T]he fact that a dangerous condition is open and obvious bears on the assessment of whether reasonable care was employed, but does not pretermit the land possessor's liability.").

**{31}** On remand we see no reason why UJI 13-1309, which lays out the general duty of care owed by a landowner or possessor to visitors, would not adequately instruct the jury on the issue of premises liability in this case. *See* Rule 1-051(D) NMRA ("Whenever

New Mexico Uniform Jury Instructions Civil contains an instruction applicable in the case and the trial court determines that the jury should be instructed on the subject, the UJI Civil shall be used unless under the facts or circumstances of the particular case the published UJI is erroneous or otherwise improper, and the trial court so finds and states of record its reasons."); *see also Benavidez*, 2007-NMSC-026, ¶ 19 (stating that applicable UJIs shall be used unless waived by the parties).

**2.      Negligent Selection/Retention of Contractor**

**{32}**    Instruction 18 stated:

> The second exception applies if Plaintiffs prove by a preponderance of evidence the following:
>
> [Defendant] is subject to liability for physical harm to third persons caused by its failure to exercise reasonable care to employ a competent and careful contractor to do work which will involve a risk of physical harm unless it is skillfully and carefully done.
>
> The words "competent and careful contractor" denote a contractor who possesses the knowledge, skill, experience, and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others, and who also possesses the personal characteristics which are equally necessary.
>
> The amount of care which should be exercised in selecting an independent contractor is that which a reasonable man would exercise under the circumstances, and therefore varies as the circumstances vary.
>
> Certain factors are important: (1) the danger to which others will be exposed if the contractor's work is not properly done; (2) the character of the work to be done—whether the work lies within the competence of the average man or is work which can be properly done only by persons possessing special skill and training; and (3) the existence of a relation between the parties which imposes upon the one a peculiar duty of protecting the other.

Instruction 18 was crafted partly from Restatement (Second) of Torts Section 411(a) and partly from the comments and illustrations to Section 411. Although the reference to "duty" renders the import of the last paragraph somewhat unclear, the commentary to Section 411 indicates that the "peculiar duty" language refers to heightened or added duties of care, not the general duty of care, as described in Section 7 of the Restatement (Third) of Torts. *See* Restatement (Second) of Torts § 411 cmt. c (stating that "there are a number of relations . . . in which peculiar care is required" and citing

examples of additional duties owed from masters to servants and from common carriers to passengers).

**{33}** Like the theory of premises liability, the theory of negligent selection/retention of a contractor flows directly from the general duty of care attributable to any actor whose conduct gives rise to a risk of harm. *See* Restatement (Third) of Torts § 55 cmt. a ("Direct-negligence claims against one who hires an independent contractor entail a specific application of the negligence principles of this Restatement."); Restatement (Third) of Torts § 55 cmt. i ("Under this Section and [Section] 56, when A hires B, A is subject to liability if A is under a duty of care and negligently causes harm within the scope of liability. The involvement of additional independent contractors (or subcontractors) is a fact that may be relevant to the determination of negligence, factual cause, or scope of liability, but not to the existence of a duty of reasonable care."). Accordingly, the jury should have been instructed that Defendant owed a duty to select and retain a competent contractor, unless the district court determined that its duty should have been limited or modified on the basis of policy imperatives. In that case, the district court would have been obligated to articulate the reasons for that determination for the record. *See Rodriguez*, 2014-NMSC-014, ¶ 25.

**{34}** On remand we see no reason why the balance of Instruction 18—all but the first paragraph identifying the duty of care as contingent and exceptional—could not be used to fairly instruct the jury as to the facts bearing on breach, causation, and scope of liability.

**3. Negligence as to Work Over Which the Hirer Has Retained Control**

**{35}** Instruction 19 stated:

> The third exception applies if Plaintiffs prove by a preponderance of the evidence that [Defendant] entrusted work to its independent contractor, McVay Drilling, but retained control of any part of the work, and is subject to liability for physical harm to others for whose safety [Defendant] owes a duty to exercise reasonable care, which is caused by its failure to exercise its control with reasonable care.
>
> [Defendant] must have retained at least some degree of control over the manner in which the work is done. It is not enough that it has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

The first paragraph of Instruction 19 was derived from Restatement (Second) of Torts Section 414, while the duty portion of the instruction was taken from the comments to that section. Unlike its framing of Instructions 17 and 18, the district court's framing of Instruction 19 as an exception to the general rule of no-liability for hirers of contractors was largely consistent with the approach taken by the Restatement (Third) of Torts, which explicitly limits a hirer's duty to exercise care in the performance of work undertaken by a contractor, provided that the hirer does not retain control over the work. *See* Restatement (Third) of Torts § 56.

**{36}** The difficulty posed by this rule is that it requires a factual determination as to the extent and nature of retained control prior to the determination of whether a duty exists. New Mexico courts have held that, where there are predicate factual determinations that bear on the existence of a duty of care, it is improper for the district court to determine duty as a matter of law at the summary judgment stage. *See Valdez v. Cillessen & Son, Inc.*, 1987-NMSC-015, ¶ 27, 105 N.M. 575, 734 P.2d 1258; *Sherman*, 2014-NMCA-026, ¶ 7; *Pollard v. Westinghouse Elec. Corp.*, 1995-NMCA-038, ¶ 6, 119 N.M. 783, 895 P.2d 683. The district court relied upon these authorities in declining to determine as a matter of law whether a duty existed in this case.

**{37}** The Estate urges us to find that a court may *never* instruct the jury to make factual determinations bearing on the existence of a duty of care. We decline to do so. Indeed, Section 56 explicitly contemplates such a scenario. Restatement (Third) of Torts § 56 cmt. g ("Determining whether a duty limit applies under this Section may involve a dispute over the existence of retained control. Most courts characterize the issue of retained control as a question for the fact[-]finder."). In this case, the district court should have issued an instruction that clearly set apart the factual determinations necessary to the determination of the duty, if any, owed by Defendant to Mr. Flores based on retained control. *See Sherman*, 2014-NMCA-026, ¶¶ 17-18, 20. This might have been accomplished with alternative instructions based on whether the facts supported imposing a duty or not. *See* Restatement (Third) of Torts § 7 cmt. b ("When resolution of disputed adjudicative facts bears on the existence or scope of a duty, the case should be submitted to the jury with alternative instructions."); *see also Eckhardt v. Charter Hosp. of Albuquerque, Inc.*, 1998-NMCA-017, ¶¶ 35-36, 124 N.M. 549, 953 P.2d 722 (holding that the district court's use of a special interrogatory to determine predicate fact necessary to determination of duty was proper).

## C. Plaintiffs Were Prejudiced by the Improper Instruction

**{38}** Defendant contends that, even if the instructions were in error, the Estate cannot demonstrate prejudice. More specifically, Defendant argues the factual questions that determined the existence of a duty are the same questions that would have been posed to the jury under breach or causation, and it does not matter to a jury whether the questions are considered under a duty rubric or a breach/causation rubric. We disagree.

**{39}** Defendant is correct that we will not reverse a jury verdict in a civil trial as a result of error in the instructions unless we determine the error is "inconsistent with substantial

justice or affects the substantial rights of the parties." *Kennedy*, 2000-NMSC-025, ¶ 26 (internal quotation marks and citation omitted). However, reversal is compelled where "the complaining party provides the slightest evidence of prejudice." *Id.* The existence of a duty is a threshold inquiry of particular importance to a plaintiff's claim of negligence. *See Schear v. Bd. of Cty. Comm'rs*, 1984-NMSC-079, ¶ 4, 101 N.M. 671, 687 P.2d 728 ("A finding of negligence . . . is dependent upon the existence of a duty on the part of the defendant."). Where, as here, there were multiple potential tortfeasors, the question of whether any particular defendant owed a duty of care to the decedent was especially important. Indeed, the thrust of Defendant's closing argument was that other actors— specifically, McVay and its employee Arenivas—were the truly responsible parties, and that holding Defendant liable for Mr. Flores's wrongful death would permit double recovery. Because the district court simultaneously instructed the jury that hirers of contractors generally owe *no* duty of care to employees (with certain exceptions) and that "[e]very person has a duty to exercise ordinary care for the safety of the person and property of others[,]" we conclude that the jury might well have been confused about the proper starting point of its analysis of the Estate's negligence claims. This constitutes more than "the slightest evidence" that the error was prejudicial. *Kennedy*, 2000-NMSC-025, ¶ 26; *see Adams v. United Steelworkers of Am., AFL-CIO*, 1982-NMSC-014, ¶ 29, 97 N.M. 369, 640 P.2d 475 (holding improper instruction was prejudicial because "the jury might well have overlooked [the defendant's] most valuable theory").

**{40}** We conclude that the jury instructions given were erroneous and prejudicial, and therefore reverse and remand for a new trial.

## II.     Remaining Issues

**{41}** Because we reverse for jury instruction error, we do not reach the Estate's remaining issues pertaining to evidentiary rulings in the first trial. It is possible that these evidentiary issues will not present themselves in the same way they were presented at the first trial, and we think it unwise to foreclose the district court judge from examining these issues in the context presented on retrial. Nevertheless, we take this opportunity to express concern with several matters raised by the Estate.

### A.     The District Court's Exclusion of Defendant's Post-Incident Communications

**{42}** The Estate argues that the district court erred in excluding two exhibits at trial concerning Defendant's actions following the May 23, 2013 accident. The first, Exhibit 15, is a December 16, 2013, safety alert describing eight incidents involving overhead power lines in that year and suggesting six corrective actions. The suggested corrective actions include pre-move route assessments, the use of flags and signs marking overhead power lines, the use of spotters, communication about overhead hazards in pre-task safety meetings, the requirement of at least a ten-foot clearance for stationary equipment, and the requirement of at least a four-foot clearance when traveling under energized power lines. The second, Exhibit 16, consists of an August 2013 email thread involving several employees of Defendant. The correspondence directs the recipients'

attention to a June 2013 presentation on overhead power line safety and instructs that "we need to comply 100% with these guidelines for every rig move involving power lines. Anyone who does not comply will be subject to disciplinary action up to and including termination of employment." The email specifically refers to the "electrocution fatality [that] occurred recently in New Mexico[.]"

**{43}** The district court addressed Exhibits 15 and 16 in conjunction with its ruling on the proposed exhibits concerning *prior* incidents involving overhead power lines. After it admitted fifteen of the thirty-three exhibits concerning prior incidents, the district court excluded the two exhibits describing post-incident corrective actions, finding the exhibits constituted evidence of subsequent remedial measures and were barred under Rule 11-407 NMRA and Rule 11-403 NMRA.

**{44}** The Estate argues that the district court erred because the excluded exhibits do not constitute evidence of subsequent remedial measures implicating Rule 11-407 and even if they do, they were admissible as evidence of Defendant's control over the premises and personnel at issue in the litigation. Defendant counters that the exhibits do concern subsequent remedial measures and that the exception does not apply because the evidence does not demonstrate Defendant's control of the power lines.

**{45}** We first consider whether the exhibits at issue constituted evidence of subsequent remedial measures. The Estate argues that the safety policies implemented after the May 23, 2013, accident were not subsequent remedial measures. Relying on our decision in *Williams v. BNSF Railway Co.*, 2015-NMCA-109, 359 P.3d 158, the Estate argues that "[Defendant] knew about the danger of moving equipment under overhead power lines long before Mr. Flores's death, just as the *Williams* defendant developed and used [a safety measure] before the injury-causing incident." Defendant contends this is a misreading of *Williams* and that "[a]t most, [the Estate] can assert only that [Defendant] used *other* safety plans and *other* corrective actions in the past."

**{46}** In *Williams*, we were presented with the question of whether a specific corrective action known to and in use by the defendant at other railyard locations could be considered a subsequent remedial measure when it was adopted by the defendant at the railyard where the injury occurred. *Id.* ¶ 11. Here, the Estate seeks to admit evidence of several different corrective actions, some of which were known to Defendant prior to the incident, and others of which appear to have been introduced only after the incident. For example, several pre-accident incident reports admitted at trial refer to actions listed in Exhibits 15 and 16, including pre-move route assessments, proper clearances for equipment, and the use of signs around power lines. These corrective actions do not appear to qualify as subsequent remedial measures because, like the safety measure in *Williams*, they were known and available to Defendant prior to the incident giving rise to the litigation. *See id.* (holding that a handbrake trailer that was "developed and used" prior to the incident at issue "was not a subsequent remedial measure"). However, the Estate fails to identify any evidence in the record that other measures identified in the correspondence—including a requirement that worksite visitors be given an orientation about potential hazards, a policy mandating repeat

measurements of loads and power lines during the day prior to any move, and a proposal to test a "high voltage power line proximity alarm device for trucks and cranes"—were in use prior to the accident. Moreover, because the correspondence specifically refers to the "recent electrocution in New Mexico," there is a strong inference that the measures identified therein were intended to address the risks that gave rise to the accident at issue in the litigation and were therefore within the scope of Rule 11-407. *See Williams*, 2015-NMCA-109, ¶ 10 (noting that one essential purpose of Rule 11-407 is to encourage repairs and modifications after an accident).

**{47}** Even if the exhibits were considered subsequent remedial measures, such evidence may still be admissible if offered "another purpose, such as impeachment or— if disputed—proving ownership, control, or the feasibility of precautionary measures." Rule 11-407. Defendant claims that the excluded exhibits were not probative of Defendant's control over the premises but, instead, "pertain[ed] to how, in the future, labeling and flagging power lines might avoid incidents like the one involving Mr. Flores." This argument seems to overlook that the excluded exhibits constitute evidence that Defendant could *require* drillers and movers to abide by rules governing use of the premises; the correspondence in Exhibit 16 mandates "100% compl[iance]" upon penalty of "disciplinary action up to and including termination of employment."

**{48}** Given this, the evidence seems admissible under the "control" exception of Rule 11-407. The district court still could exclude the evidence if it determined that "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 11-403. Here, the district court determined that the exhibits were prejudicial to Defendant because of the cumulative effect of the evidence already admitted concerning *prior* incidents:

> In addition, as part of my consideration, . . . I balance this document with other exhibits that I have just let in. I have just let in a lot of exhibits that talk about safety plans on separate incidents, separate incidents, fatalities from separate incidents. So a lot of that I have allowed in for the jury on prior accidents. And I think now to allow this, on a balancing test of [Rule 11-]403, I think it is certainly prejudicial to [D]efendant, especially in the application of [Rule] 11-407.

Although the record is unclear, in finding Exhibits 15 and 16 cumulative of the evidence of prior incidents, the district court seems to have failed to apprehend a critical difference between the legal significance of each—the former was offered by the Estate to demonstrate that Defendant had notice of the dangers existing on the premises, while the latter was offered to demonstrate Defendant's control of the premises.

**{49}** We are unable to tell, on the record before us, the precise basis of the district court's determination. For example, it is possible the district court determined that the evidence of prior incidents was probative of both notice and control, in which case its determination that Exhibits 15 and 16 were cumulative fell within its discretionary

authority. *See City of Albuquerque v. Westland Dev. Co.*, 1995-NMCA-136, ¶ 27, 121 N.M. 144, 909 P.2d 25 (stating that there was no abuse of discretion where the trial court refused to permit multiple witnesses to testify on substantially the same matter). However, if it found that the exhibits amounted to cumulative evidence without regard for the differential legal effect of pre-incident and post-incident communications, such a determination would constitute error. *See N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (stating that "we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law" (alteration, internal quotation marks, and citation omitted)).

**{50}** On remand and consistent with our discussion above, the district court should make a specific finding as to whether evidence of subsequent remedial measures, considered in light of any admitted evidence of prior similar incidents, presents a potential risk of unfair prejudice to Defendant. *See Williams*, 2015-NMCA-109, ¶ 26 ("The purpose of Rule 11-403 is not to guard against any prejudice whatsoever, but only against the danger of *unfair* prejudice." (internal quotation marks and citation omitted)).

## B.    Defendant's Argument in Closing Regarding the Settlement Agreement

**{51}** Although the Estate's contention that Defendant engaged in an improper and prejudicial closing argument is unpreserved, we believe defense counsel's use of the settlement agreement in closing warrants admonition. The Estate contends that, having successfully moved for admission of the settlement agreement for the purpose of casting doubt on McVay's credibility, Defendant's subsequent use of the evidence for a different and improper purpose during closing argument was error.

**{52}** Specifically, in closing, Defendant used the settlement agreement to (1) cast doubt on the validity of the Estate's claim by pointing to the "doubtful and disputed" claim language in the settlement agreement, which is typical in any release agreement; (2) attack the testimony of one of the Estate's witnesses who testified that Mr. Flores's mother could not receive therapy because she did not have the money to pay for it; (3) suggest that McVay and Arenivas were improperly released from the claims against them and that it was wrong for counsel for the Estate to suggest that nobody would be held accountable for the accident; and (4) allege that a witness was biased against Defendant. Only the last of these uses was authorized by the district court in its decision to admit the settlement agreement.

**{53}** We agree with the Estate that Defendant's use of the settlement agreement during closing argument was at times improper and may have been calculated to cast aspersions upon the Estate's counsel and Mrs. Flores. Had the Estate tendered a proper objection during Defendant's closing argument, the district court could have appropriately limited Defendant's argument or instructed the jury to disregard its improper use of the evidence. *See Fahrbach v. Diamond Shamrock, Inc.*, 1996-NMSC-063, ¶ 13, 122 N.M. 543, 928 P.2d 269 (stating that the policy behind Rule 11-408 "applies with equal force to the comments of the court or of counsel made in argument to the jury or in voir dire" (internal quotation marks and citation omitted)). However, the

Estate failed to make such an objection and thereby deprived the district court of an opportunity to rule on the issue.

**CONCLUSION**

**{54}**   For the foregoing reasons, we reverse and remand for proceedings consistent with this opinion.

**{55}   IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MICHAEL D. BUSTAMANTE, Judge Pro Tempore**